IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEBORAH ALLEN-SHERROD, :
for her minor child, :
Anthony Stallworth, II, :
 :
      Plaintiff, :
 : CIVIL ACTION NO.
    v. : 1:05-CV-0600-JOF
 :
HENRY COUNTY SCHOOL DISTRICT :
and DAVID EDINGER, :
in his individual capacity :
 :
      Defendants. :

## OPINION AND ORDER

This matter is before the court on Defendants' motion for summary judgment [40].

**I**    **Background**

    **A.**    **Procedural History**

On March 2, 2005, Plaintiff, Deborah Allen-Sherrod, filed suit on behalf of her minor child, Plaintiff Anthony Stallworth, II, against Defendants, the Henry County School District and David Edinger. Her complaint raised claims of race discrimination and race retaliation. On March 31, 2006, Defendants filed their motion for summary judgment.

**B.     Facts**

From 2000 through 2004, Plaintiff Stallworth was a student at Eagles Landing High School, which is within the Henry County School District. During the 2000-2001 school year, Plaintiff Stallworth was a member of the ninth grade basketball team. During this season Defendant Edinger was the ninth grade squad's coach. The following year, Defendant Edinger was made the coach of the varsity basketball team at Eagles Landing High School. During his sophomore season, Plaintiff Stallworth was a member of the varsity basketball team and spent part of the season as a co-captain of the team. At the beginning of the 2002-2003 season, Plaintiff Stallworth was placed on the junior varsity basketball team. Later during that season Plaintiff Stallworth was elevated to playing on the varsity basketball team again.

On February 11, 2003, Plaintiff Stallworth witnessed an incident involving Defendant Edinger. Apparently two middle school students came into the high school gym. Another basketball coach, Coach Byrom, informed the middle school students that they had to leave the premises, after which a verbal confrontation ensued between the students and Defendant Edinger. During this confrontation, the parties agree that Defendant Edinger called the students "thugs." After the middle school students used vulgar language directed at the coaches, Defendant Edinger said, "why don't you come over here and try it?" Further, Defendant Edinger called the students "drug dealers" and asked the students if they got their clothing from drug money. After this exchange the middle school students departed. After the middle school students left, Defendant Edinger also departed. Later, the middle school

2

students returned with a parent. A physical altercation ensued between the middle school students and the parent on one side and Coach Byrom on the other, after which the police were called.

Plaintiff Stallworth went home and reported the incidents to his parents. He told them about the verbal exchange and the physical altercation. From the record it appears that his only complaint was that the coach had no basis to say that the students were thugs or drug dealers. The next day Plaintiff' mother, Allen-Sherrod, called Eagles Landing High School to discuss the incident. She also talked with a School Board member, Eric Charles, about the situation. She also called one of the principals at the school; she thinks that it was Assistant Principal Ray Adams with whom she spoke. During Plaintiff Allen-Sherrod's conversation with the assistant principal, she asserted that both parties to the verbal and physical altercations had a responsibility for the events and that "it weighed more heavily on the teachers and the coaches to be able to handle situations." Principal Hildreth was unaware that Plaintiff Allen-Sherrod had called the school to discuss the situation. Other parents also complained about the way Defendant Edinger acted during the incident. As a result of the incident, Principal Hildreth, who considered Defendant Edinger's comments to have been inappropriate, spoke with him concerning the incident and  issued a letter of direction. Defendant Edinger apologized to Principal Hildreth for the comments he had made.

At this point in the basketball season, Plaintiff Stallworth's playing time on the basketball court was reduced. The following school year Plaintiff Stallworth, now a senior,

3

again tried out for the basketball team; he was cut from the squad on the first day of tryouts. Plaintiff Allen-Sherrod and her husband contacted Defendant Edinger. When asked why he cut Plaintiff Stallworth from the team, Defendant Edinger stated that he could not quite put his finger on what was wrong with Plaintiff Stallworth. At other times he stated that Plaintiff Stallworth lacked focus.

Allen-Sherrod tried to contact various people at the school concerning Plaintiff Stallworth being cut from the basketball team; as a result, a meeting was held to discuss the situation. On October 30, 2003, Allen-Sherrod, Mr. Sherrod, and Reverend Edwards of the NAACP met with Dr. Hildreth, Defendant Edinger, and Mr. Stinchcomb, the athletic director of the school, to discuss why Plaintiff Stallworth was cut from the team. At the meeting Allen-Sherrod stated that she believed her son was cut from the basketball team in retaliation for her complaints that she had made the previous spring concerning Defendant Edinger's language during the February 11 incident. At the meeting Defendant Edinger contended that Plaintiff Stallworth was cut because he was not focused enough. At the end of the meeting, Defendant Edinger agreed to have re-tryouts for the basketball team. Subsequently, re-tryouts were held and Plaintiff Stallworth again was cut and did not make the basketball team.

### C. Contentions

Plaintiff contends that Defendants retaliated against Plaintiff Stallworth because of his mother's comments critical of Defendant Edinger's conduct. It is contended that Plaintiff Stallworth is entitled to redress for retaliation and discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments and Title VI of the

4

Civil Rights Act. Defendants argue that Plaintiff has not presented any evidence that Defendant Edinger knew of the comments made by Plaintiff Allen-Sherrod prior to Plaintiff Stallworth not making the varsity basketball team his senior year. Further, Defendant Edinger explicitly asserts that he did not know of such comments prior to cutting Plaintiff Stallworth from the basketball team. Defendants contend that the failure to show knowledge of the comments by Defendant Edinger undercuts all of Plaintiff's claims of retaliation. Therefore, Defendants claim that they are entitled to summary judgment.

## II.     Discussion

### A.     Race Discrimination

Plaintiff raises claims of race discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. Plaintiff never argues that Plaintiff Stallworth was cut from the team due to his race. Plaintiff's briefing and analysis show that the discrimination claims are merely another vehicle for attacking the Defendants' alleged retaliation. Plaintiff continuously alleges that he had his playing time reduced and that he was cut from the basketball squad in retaliation for his mother's comments about Defendant

Edinger's behavior.[1]  Therefore, the court will address the Plaintiff's claims of discrimination and retaliation together applying a retaliation analysis.

### B.     Race Retaliation (42 U.S.C. § 1981)

In the complaint, Plaintiff claims that the alleged retaliation was in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 as well as the First and Fourteenth Amendments to the United States Constitution.  Plaintiff further argues that Defendants have violated Plaintiff Stallworth's rights under Art. I. § 1, Paragraph 5, of the Constitution of the State of Georgia.

"The right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly established right exists under the *equal protection* clause [of the Fourteenth Amendment] to be free from retaliation." *Ratliff v. DeKalb County,* 62 F.3d 338, 340 (11th Cir. 1995).  Therefore, the court finds that Plaintiff cannot bring a claim for retaliation under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment.

Moving on to Plaintiff's 42 U.S.C. § 1981 retaliation claim, courts apply the burden-shifting analysis applied in Title VII retaliation claims to section 1981 retaliation claims. *See Carr v. Stillwaters Development Co., L.P.*, 83 F. Supp. 2d 1269, 1277 (M.D. Ala. 1999).  The

---

[1] Besides the retaliation, Plaintiff Stallworth mentions two allegedly discriminatory actions.  First, he states that African-American players were not allowed to have Afro hairstyles while white players could have their hair spiky.  Further, Plaintiff Stallworth contends that Defendant Edinger used the term "brothers" and seemed to be referring to African-American players.  Nonetheless Plaintiffs, throughout their briefing, have not shown how these facts support any of Plaintiff's claim of discrimination.  Plaintiff merely states that these were the types of things that Plaintiff Allen-Sherrod complained about to the school on February 12, 2003.

court will first determine whether or not Plaintiff has established a *prima facie* case of retaliation. "To establish a *prima facie* case of retaliation the plaintiff must show (1) that plaintiff engaged in statutorily protected expression; (2) that he suffered an adverse action; and (3) that there is some causal relationship between the two events." *Holifield,* 115 F.3d at 1566.

Although not briefed by the parties, the court has concerns regarding whether Plaintiff Stallworth can satisfy the first prong of showing a prima facie of section 1981 retaliation. Specifically, the court is concerned about whether Plantiff Stallworth can raise a claim of retaliation based upon the statutorily-protected expression of his mother.

Several courts have held that a claim for "third-party" retaliation is not actionable under either section 1981 or other similar retaliation statutes. *See, e.g., Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561 (3rd Cir.), *cert. denied,* 537 U.S. 824 (2002) (claims raised under certain anti-retaliation provisions of the ADA and ADEA only allow claim for those who actually engage in the protected activity); *Smith v. Riceland Foods, Inc.,* 151 F.3d 813 (8th Cir.1998) ("We believe that the rule . . . -- that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so -- is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation."); *Holt v. JTM Industries, Inc.,* 89 F.3d 1224 (5th Cir. 1996), *cert. denied,* 520 U.S. 1229 (1997) (an individual who has not participated in conduct that is protected by the ADEA has no automatic standing to sue for retaliation simply because his or

7

her spouse has engaged in protected activity); *Thomas v. Ford Motor Co.*, 2000 WL 951733 (N.D. Ga. Feb. 10, 2000) (Plaintiff not allowed to rely on protected activity of husband to make a prima facie case of section 1981 retaliation).

However, at least two courts have broadly interpreted the language of Title VII to encompass claims of retaliation for complaints made *on behalf* of the plaintiff. *See EEOC v. Ohio Edison Co.,* 7 F.3d 541, 545-46 (6th Cir. 1993) (the words in the statute should be broadly construed to include a claim in which an employee, *or his representative,* has opposed any practice made an unlawful employment practice); *Baird v. Rose,* 192 F.3d 462, 471 n. 10 (4th Cir. 1999) (retaliation for mother's complaint actionable where mother was acting on plaintiff's behalf).[2]

Solely for the purposes of this order, this court will assume without deciding, that Mrs. Sherrod-Allen's comments were made in a representative capacity for Plaintiff Stallworth, and that satisfies the first prong of making a prima facie case of section 1981 retaliation.

With regard to the third element in proving a prima facie case of retaliation, while this circuit interprets the causation requirement broadly, common sense requires that plaintiff must show that a decision maker was aware of the protected activity in order to have a valid claim of retaliation. *Brungart v. BellSouth Telecomm's, Inc.* 231 F.3d 791, 799 (11th Cir.

---

[2] The facts do not clearly show that the mother was stating her son's complaints. He was upset that the coach prejudged the students, while his mother complained about the coaches management of the events. Morever, it is doubtful that his mother's speech satisfies the requirement that section 1981 retaliation be based on comments specifically related to race discrimination. See cases collected at *Tucker v. Talladega City Schools*, 171 Fed. Appx. 289, 294-96 (11th Cir. 2006).

8

2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). "[W]here there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct," a plaintiff may not rely solely on close temporal proximity between a party's protected conduct and the adverse action to create a genuine issue of material fact of a causal connection. *Id.* (citing *Clover*, 176 F.3d at 1355-56).

Here, Plaintiff has failed to show a causal relation between Plaintiff Allen-Sherrod's comments and the subsequent diminished playing time and the subsequent cutting of Plaintiff Stallworth from the varsity team. Defendant Edinger specifically maintains that he did not learn of Plaintiff Allen-Sherrod's comments until October 30, 2003, at the earliest, after Plaintiff Stallworth had been cut from the varsity team.[3]

Plaintiff has not produced any evidence to rebut Defendant Edinger's testimony. Plaintiff relies only on the close temporal proximity of the comments to the diminished playing time[4] and the decision to cut Plaintiff Stallworth and on the fact that Defendant Edinger could not put his finger on why he cut Plaintiff Stallworth.[5] This proximity in time

---

[3] Plaintiff Stallworth states that he never mentioned the incident to Defendant Edinger. Further, Plaintiff Allen-Sherrod states that she never talked with Defendant Edinger about the incident before the October 30 meeting.

[4] Plaintiff Stallworth's reduced varsity squad playing time after his mother's comments about the February 2003 incident was not the first time that his varsity playing time had been reduced. Although he made the varsity squad in his sophomore year, he was placed on the junior varsity team at the start of the season in his junior year, months before the February incident.

[5] In her response to the motion for summary judgment, Plaintiff makes an extensive attack on Defendant Edinger's credibility. At summary judgment it is improper for the court to consider the credibility of any witness. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th

9

and lack of specific reason is not circumstantial evidence of Defendant Edinger's knowledge sufficient to rebut affirmative statements in his deposition.[6]

Therefore, the court finds that Plaintiff has failed to make a *prima facie* case of retaliation in violation of either 42 U.S.C. § 1981. For this reason, the court GRANTS Defendants' motion for summary judgment on Plaintiff's retaliation claims under 42 U.S.C. § 1981.

---

Cir. 1986) ("The district court must not assess[] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device.").

[6] Further, Plaintiff contends that here there is much more circumstantial evidence than found in *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, (11th Cir. 1986), where the court found a causal connection. This argument is belied by the fact that in *Donnellon* there was no claim that the decision maker did not know that the employee had engaged in protected conduct.

### C.    Retaliation in Violation of the First Amendment (42 U.S.C. § 1983)

Plaintiff also claims that Defendants' retaliation violates the First Amendment of United States Constitution.  Courts have recognized First Amendment retaliation in the educational environment. *See, e.g., Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005); *Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000).

To state a claim for retaliation for exercising their First Amendment rights a plaintiff must establish that:  (1) His/her speech or act was constitutionally protected; (2) the defendant's retaliatory conduct discourages the protected speech; and (3) a causal connection existed between the retaliatory conduct and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

Assuming, *arguendo*, that Plaintiff has shown the first two elements of retaliation violating the First Amendment, Plaintiff is unable to show that a causal connection existed between the retaliatory conduct and the adverse effect on speech.  Just as stated above, without any evidence that Defendant Edinger knew of Plaintiff Allen-Sherrod's statements prior to cutting Plaintiff Stallworth from the basketball team, there cannot be a causal connection between Plaintiff Allen-Sherrod's statements and Defendant Edinger's decisions with regard to Plaintiff Stallworth.  Therefore, the court GRANTS Defendants' motion for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim for violations of the First Amendment.

AO 72A
(Rev.8/82)

**D.      Title VI**

In count four of the complaint, Plaintiff raises a claim for race discrimination under Title VI.  Specifically, Plaintiff contends that "Defendants' refusal to permit Plaintiff to participate in a school activity receiving federal funds due to his race is in violation of Title VI."  This court finds that this count does not raise a claim for retaliation in violation of Title VI.[7]  However, in his response to Defendants' motion for summary judgment, Plaintiff contends that Defendants are not entitled to summary judgment as they violated Title VI by retaliating against him for comments made by his parents.  Basically, Plaintiff is asserting a new claim for Title VI retaliation.

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a).  A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."  *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

As Plaintiff may not amend his claim to add a claim of retaliation under Title VI in his response to Defendant motion for summary judgment and Plaintiff made no argument to support a finding of race discrimination save his new argument of retaliation, the court deems his Title VI claim abandoned.  Therefore, the court GRANTS Defendants' motion for summary judgment with regard to Plaintiff's Title VI claim.

---

[7] The Plaintiff's other counts also evince that Plaintiff was not raising a claim for retaliation in count four.  Specifically, Plaintiff in count one raises a claim of race discrimination under sections 1981 and 1983.  In count two Plaintiff raised a separate claim for race retaliation under section 1981.  Thus, in the complaint Plaintiff recognized that there were separate causes of action for discrimination and retaliation.

**III.    Conclusion**

The court GRANTS Defendants' motion for summary judgment [40].

**IT IS SO ORDERED** this 27th day of March 2007.

                                                              s/ J. Owen Forrester  
                                                              J. OWEN FORRESTER  
                                          SENIOR UNITED STATES DISTRICT JUDGE

AO 72A  
(Rev.8/82)